UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JASON MICHAEL MIDDLETON, Plaintiff, | ) | |
| v. | ) | No. 2:20-cv-00039-JRS-MG |
| PERSON, Defendant. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

For the reasons explained in this Entry, the plaintiff's motion for summary judgment, dkt. [20], is **denied** and the defendants' cross-motion for summary judgment, dkt. [24], is **granted.**

## I. Background

Indiana prisoner Jason Middleton brings this 42 U.S.C. § 1983 civil rights action against Dr. Michael Person. Cross-motions for summary judgment have been filed and are ripe for resolution.

Mr. Middleton alleges that on October 3, 2018, he was transported from the Plainfield Correctional Facility ("Plainfield") to the Shelby County Jail ("the Jail"). He alleges that he was undergoing cancer treatment at the time and Plainfield staff had sent his pain medication with him. He alleges that Dr. Person, the Jail doctor, was aware that Mr. Middleton was undergoing treatment and was on pain medication, but Dr. Person refused to give him his pain medication, refused to see him, and ignored his medical requests. This continued for a week. Mr. Middleton was taken back to Plainfield on October 10, 2018.

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosps. Corp.* 892 F.3d 887, 893 (7th Cir. 2018).

## III. Discussion

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the non-moving parties with respect to the cross-motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

#### 1. Treatment for Skin Cancer Prior to Arriving at the Jail

Mr. Middleton received surgery and radiation therapy for skin cancer on his right lower lip in June, July, and August of 2018, while he was in custody at Plainfield. Dkt. 25-2 at 7, 17−82.

While radiation therapy was ongoing, Dr. Polar, a physician at Plainfield, issued alternating prescriptions of Tramadol and Norco (Hydrocodone) for pain. *Id.* at 17−82. Mr. Middleton's last radiation treatment was on August 17, 2018. *Id.* at 71, 82. On August 21, 2018, Dr. Polar modified Mr. Middleton's Norco 5/325 prescription to 2 tablets every 8 hours as needed, with a stop date of October 9, 2018. *Id.* at 84.

On September 7, 2018, Mr. Middleton had a follow-up visit at the Cancer Center. *Id.* at 86. His lip was noted to be healing "excellently" and there were no signs of any new cancer lesions. *Id*. His surgeon, Dr. Thomas Schmitz, recommended that Mr. Middleton continue with a Hydrocortisone cream, A&D ointment, and Triamcinolone dental paste for three weeks. *Id*. Dr. Schmitz's consultation report did not recommend any pain medication. *Id.*

### 2. Dr. Person and Mr. Middleton's Week at the Jail

In 2017 through part of 2019, Dr. Person was employed as a licensed physician with Advanced Correctional Healthcare, Inc. ("ACH"), a company that provides physicians to provide medical care to inmates at county jails throughout Indiana, including the Jail. Dkt. 25-1, ¶ 2-3. In 2018, Dr. Person was physically at the Jail one day a week for several hours to see patients. *Id*., ¶ 3. He was also on-call twenty-four (24) hours a day, seven days a week for questions or issues regarding inmates' medical needs. *Id*. If Dr. Person was not available or was on vacation, another ACH physician would fill in. *Id*.

There were also nurses working at the Jail. *Id.*, ¶ 4. The nurses, as well as the officers at the Jail, were Dr. Person's eyes and ears when he was not at the Jail. *Id*. Dr. Person relied on them to provide pertinent, accurate information to him about patients so he could decide if he needed to prescribe something or if he needed to see the patient. *Id*. The Jail has a system where an inmate can submit a written sick call request to medical staff including questions and requests to be seen. Id., ¶ 14. Typically, nurses at the Jail answer the requests and respond to them. *Id*. In some

instances, the nurses will communicate information to Dr. Person about an inmate and he will in turn advise of any treatment orders. *Id*. When this occurs one of the nurses will advise the inmate of the treatment orders or let the inmate know that there are no orders from the provider. *Id.*

On October 3, 2018, Mr. Middleton was transferred from Plainfield to the Jail and arrived with Dr. Polar's prescription for Norco. *Id.*, ¶ 6. Norco is a narcotic pain medication. *Id.* The prescription was ordered from September 11, 2018 through October 10, 2018. *Id.*; dkt. 25-1 at 25. The Norco was to be taken "as needed." *Id*. That means the patient only receives the medication when he reports having pain. Dkt. 25-1, ¶ 6. Mr. Middleton did not come with any other medication or treatment orders besides the Norco. *Id*. He also did not come with any other paperwork verifying that he had cancer or that he was undergoing cancer treatment. *Id*.

The day Mr. Middleton arrived at the Jail, nursing staff contacted Dr. Person by telephone. *Id.*, ¶ 7. Dr. Person was informed that Mr. Middleton's Norco prescription was to be taken "as needed" and was set to expire in one week (October 10, 2018). *Id*. At that time, Dr. Person had no information regarding Mr. Middleton's cancer including the type of cancer, when it was removed, and his current condition including whether he was currently undergoing cancer treatment. *Id.* Dr. Person did not approve the Norco and instead modified the order to Tylenol twice a day (BID). *Id*. Based on what Dr. Person knew at the time, he believed it was medically appropriate to treat Mr. Middleton's report of pain, if he ended up making any, with Tylenol, a non-narcotic pain medication. *Id*.

That same day, Jail nursing staff contacted Plainfield and left a message with the Director of Nursing for a return call for more information on Mr. Middleton's condition. *Id.*, ¶ 9; dkt. 25-1 at 10. Plainfield did not return the call before Mr. Middleton transferred back to the prison on October 10, 2018. *Id*.

On October 7, 2018, Mr. Middleton submitted a sick call request stating that he had cancer, he could not take Tylenol, and requesting pain medication. *Id.*, ¶ 10; dkt. 25-1 at 16. On October 9, 2018, Jail nursing staff contacted Dr. Person regarding Mr. Middleton's request. Dkt. 25-1, ¶ 11. He declined to prescribe any additional pain medication besides the Tylenol. *Id.* At that time, the nurses still had not received any paperwork or any return phone calls from Plainfield regarding Mr. Middleton's cancer diagnosis and his condition. *Id*. Further, Mr. Middleton had refused to take the Tylenol Dr. Person prescribed the entire time he was at the Jail. *Id.*, ¶ 12; dkt. 25-1 at 21-24. The next day, October 10, 2018, Mr. Middleton was transferred back to Plainfield. *Id*.

Dr. Person tries to avoid prescribing narcotic pain medication until less addictive medications have failed or unless the diagnosis truly calls for narcotic pain medication, such as when someone has just had surgery or has serious, acute pain. *Id*., ¶ 8. It is Dr. Person's opinion that when a patient takes Norco after removal of a cancerous lesion on their skin, the patient is not taking Norco to treat the actual cancer. *Id.*, ¶ 17. The patient is taking Norco to treat pain associated with the removal of the cancerous lesion; *i.e.*, the cutting of the skin to remove the lesion. *Id*. That pain is temporary as is any pain associated with having something removed from the skin. *Id*. When treating Mr. Middleton, Dr. Person based his treatment decisions on the patient's subjective complaints, objective conditions, and on Dr. Person's reasoned medical judgment developed over his years of practicing medicine. *Id.*, ¶ 16.

### B. Analysis

Mr. Middleton argues that Dr. Person was deliberately indifferent to his serious medical needs. Specifically, Mr. Middleton contends that Dr. Person denied him his previously prescribed pain medication without seeing him, without talking to medical staff at Plainfield or his "cancer specialist" Dr. Schmitz, and without reviewing his medical records. He further alleges that Dr.

Person ignored his medical requests and refused to see him.

At all relevant times, Mr. Middleton was a convicted offender. This means that the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster*, 658 F.3d 742, 750-51 (7th Cir. 2011).

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). Even a showing of medical malpractice is not sufficient. *Id.* "Rather, the evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.*

For purposes of the motions for summary judgment, Dr. Person does not dispute that a complaint of pain can be considered an objectively serious medical condition. Dkt. 25 at 21. Accordingly, the Court need only determine whether a reasonable jury could conclude that Dr. Person was deliberately indifferent to Mr. Middleton's complaints of pain.

It is undisputed that before Mr. Middleton was transferred to the Jail for a week in October 2018, he had undergone radiation for skin cancer on his lip. The specifics of his cancer treatment, however, were not provided to Dr. Person during Mr. Middleton's short stay at the Jail. Jail nursing staff called the Plainfield Director of Nursing in an attempt to learn more about Mr. Middleton's current medical condition, but no information was obtained before Mr. Middleton was transferred back to Plainfield.

What Dr. Person did know is that a prison physician had prescribed Norco for Mr. Middleton on September 11, 2018, three weeks before he arrived at the Jail. The prescription was to be provided "as needed" and was set to expire on October 10.[1] Mr. Middleton did not have any other medical records or treatment orders. There was no verification of the type of cancer, what treatments he had received, or any records that explained the rationale for the narcotic pain medication. Even if Dr. Middleton had had access to Mr. Middleton's medical records, they would have shown that his radiation treatment had ended August 17, 2018, and his cancer specialist did not prescribe Norco after September 14, 2018.

Although Dr. Middleton was made aware that Mr. Middleton was complaining of pain, he exercised his medical judgment in determining that a non-narcotic pain medication, Tylenol, was appropriate. He offered an alternative medication for pain. Although Mr. Middleton argues that Dr. Person should have reviewed his medical records, none were sent with Mr. Middleton and nursing staff were not able to obtain more information during Mr. Middleton's one week stay.

---

[1] To the extent Mr. Middleton contends that his "cancer specialist" prescribed Norco for him during the time he was at the Jail, this is not supported by any designated admissible evidence. Rather, the record reflects that Dr. Schmitz last prescribed Norco through September 14, 2018, two and a half weeks before Mr. Middleton arrived at the Jail. Dkt. 25-2 at 68.

Clearly, Mr. Middleton believed that he should have been given a narcotic pain medication, but his disagreement with Dr. Person's opinion and even Dr. Person's disagreement with Dr. Polar's prescription are not sufficient to defeat summary judgment. "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409. In addition, "an inmate is not entitled to demand specific care and is not entitled to the best care possible…." *Arnett*, 658 F.3d at 754. Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.* Moreover, this is not a case where the physician continued to prescribe a course of treatment that he knew was ineffective. Mr. Middleton never informed Jail medical staff that Tylenol was not working. Rather, he refused to take the Tylenol.[2]

The Seventh Circuit has not "suggest[ed] that prison doctors must always defer to the judgment of a doctor who treated an inmate prior to his detention." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "Rather, the prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Id.*

As in *Holloway*, Dr. Person was not required to defer to Dr. Polar's treatment decision. Simply showing that Dr. Person changed the narcotic prescription to another pain medication is not sufficient to defeat summary judgment on a claim of deliberate indifference. "Surely [plaintiff] would have preferred to have been treated by a doctor who would have prescribed Oxycontin to

---

[2] Mr. Middleton's allegations that his cancer specialist told him to avoid anything that might upset his stomach and that Tylenol upset his stomach are not supported by any designated admissible evidence. Dkt. 29 at 4. Moreover, Dr. Person points out that Norco contains Acetaminophen, which is also known as Tylenol, so he does not believe that it makes sense medically for a patient to be able to take Norco but not Tylenol. Dkt. 25-1, ¶ 13.

treat his chronic pain rather than the nonnarcotic substitutes, but a prisoner is not entitled to receive unqualified access to healthcare." *Id.* (affirming prison physician's refusal to prescribe narcotic pain medication) (internal quotation omitted).

"A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Id.* (internal quotation omitted). Mr. Middleton has presented no evidence demonstrating that Dr. Person's treatment decision was one no competent physician would make. Dr. Person's decision is therefore entitled to deference.

Mr. Middleton has not shown that Dr. Person was aware of any acute condition for which the standard of care compelled a narcotic medication. Dr. Person exercised his medical judgment and provided a reasonable course of treatment. Accordingly, Dr. Person is entitled to summary judgment in his favor.

**IV. Conclusion**

For the reasons discussed above, the plaintiff's motion for summary judgment, dkt. [20], is **denied** and the defendant's cross-motion for summary judgment, dkt. [24], is **granted.** Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date: 5/12/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASON MICHAEL MIDDLETON
158480
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Jill Esenwein
BLEEKE DILLON CRANDALL ATTORNEYS
jill@bleekedilloncrandall.com